IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROBYN MARSHALL,**

    **Plaintiff,**

  vs.                                                                 **Civil Action 2:13-cv-966**
                                                                            **Judge Graham**
                                                                            **Magistrate Judge King**

**BELMONT COUNTY BOARD OF
COMMISSIONERS,** *et al.***,**

    **Defendants.**

<u>REPORT AND RECOMMENDATION</u>

    This is an employment action in which plaintiff, formerly the director of the Belmont County 9-1-1 Emergency Services Center, alleges that she was discriminated against and eventually terminated on account of her disability in violation of the ADA, 42 U.S.C. § 12101 *et seq.*, and on account of her gender and in retaliation for having engaged in protected activities in violation of Title VII, 42 U.S.C. § 2000e-5.  Plaintiff also asserts parallel state law claims of gender and disability discrimination and retaliation under O.R.C. § 4112.01 *et seq.*, as well as state law claims of intentional infliction of emotional distress, defamation, and tortious interference with a contract.  This matter is now before the Court, upon a specific order of reference pursuant to 28 U.S.C. § 636(b)(1)(B), *see Order of Reference*, Doc. No. 16, for consideration of *Defendants' Motion for Order that Attorney-Client Privilege Has Not Been Waived* ("*Defendants' Motion*"), Doc. No. 13.  Plaintiff opposes the motion, *Plaintiff's Response*, Doc. No. 14, and defendants have filed a reply, *Defendants'*

*Reply*, Doc. No. 15.  This matter is now ripe for consideration.

**I.   Background**

The *Complaint*, Doc. No. 1, contains the following allegations. Plaintiff Robyn Marshall ("plaintiff" or "Ms. Marshall") was hired by Belmont County 9-1-1 Emergency Services Center (the "9-1-1 Center") in 1996 and was promoted to Director of the 9-1-1 Center in July 2007. *Id*. at ¶¶ 2, 10-11.  The 9-1-1 Center is a department of Belmont County and "act[s] under the authority and oversight" of defendant Belmont County Board of Commissioners (the "Board").  *Id*. at ¶¶ 3-4. Defendants Ginny Favede, Matthew Coffland, and Charles Probst are all members of the Board.  *Id*. at ¶ 5.

From April through October 2011, she alleges, plaintiff "came under discriminatory scrutiny by the Board in her role as Director" of the 9-1-1 Center.  *Id*. at ¶¶ 13-17.  Plaintiff thereafter "filed complaints regarding the discriminatory treatment in writing and in person to the County's human resources director, Michael Kinter."  *Id*. at ¶ 19.  Plaintiff has "severe anxiety" and "took a number of sick days off due to her job-related, severe anxiety, but . . . the County only began scrutinizing her more, treating her as disabled and discriminating against her based upon her disability."  *Id*. at ¶¶ 22, 70.  According to the *Complaint*, "an ad hoc system of reporting and oversight" was then established solely for plaintiff.  *Id*. at ¶¶ 24-25.

On November 18, 2012, plaintiff was notified that the 9-1-1 Center was understaffed because two dispatchers had left to "perform life-saving measures on a critically injured child in the 9-1-1 Center parking lot."  *Id*. at ¶¶ 28-29.  Upon the arrival of EMS personnel,

Bri Clark, a dispatcher, allegedly "disregarded her duty and . . . rode with the EMS squad to the hospital;" she did not return to the 9-1-1 Center for one and ½ hours.  *Id*. at ¶¶ 32-38.  Upon her return, plaintiff placed Bri Clark on administrative leave pending an investigation.  *Id*. at ¶ 39.

"The next day, November 19, 2012, Marshall called an attorney for the County seeking counsel on how to handle the incident with Bri Clark.  The attorney instructed Marshall to issue an oral reprimand to Bri Clark."  *Id*. at ¶ 47.  At some point, presumably before December 27, 2012, plaintiff "informed the Board of her plan to issue an oral reprimand to Bri Clark unless she received a written directive from the Board advising otherwise.  Marshall was acting at the direction of the attorney for Belmont County, who instructed her to issue the oral reprimand."  *Id*. at ¶ 52.  Bri Clark was removed from administrative leave on December 27, 2012.  *Id*. at ¶¶ 50-51.  Plaintiff was directed by email that same day to take no disciplinary action against Bri Clark for her actions on November 18, 2012.  *Id*. at ¶54.  However, plaintiff did not see that email until the following day, after she had already issued a verbal reprimand.  *Id*. at ¶¶ 55-56.

Plaintiff was herself placed on administrative leave on December 31, 2012 pending an investigation.  *Id*. at ¶ 61.  On January 11, 2013 during an executive session of the Board, defendant Christine Palmer recommended that plaintiff's "employment be terminated immediately because she was allegedly 'disrespectful, insubordinate, dishonest, and deceptive and had otherwise failed to exhibit good behavior by working without Board authority and against the Board's direction in issuing the verbal reprimand to Bri Clark.'"  *Id*. at ¶ 63.  The Board

3

terminated plaintiff's employment with the 9-1-1 Center during the January 11, 2013 executive session.  *Id*. at ¶ 64.

**II. Discussion**

Defendants seek an order confirming that the attorney-client privilege between the Board and its' former counsel has not been waived by either "1) Ms. Marshall's attempt to disclose a conversation between the Board's former counsel and Ms. Marshall while Ms. Marshall was the Board's fiduciary; and 2) the Board's then former counsel's (and he has since remained as a former counsel) unauthorized disclosure of that conversation to Ms. Marshall's counsel." *Defendants' Motion*, p. 1.  Defendants also seek an order "explicitly prohibit[ing] Ms. Marshall from testifying that she sought the advice of counsel and acted strictly in accordance therewith." *Id*. at pp. 8-9.

The purpose of the attorney client privilege is to encourage clients to communicate freely with their attorneys.  *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  However, because the attorney client privilege operates to reduce the amount of information available for discovery, it is to be narrowly construed. *Id.*  The party invoking the protection of the attorney client privilege bears the burden of establishing the following:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by his legal advisor, (8) except the protection be waived.

4

*Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992) (quoting *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985)).

According to the *Complaint*, on November 19, 2012, plaintiff "called an attorney for the County seeking counsel on how to handle" a 9-1-1 dispatcher who "disregarded her duty" by riding "with an EMS squad to the hospital" after "perform[ing] life-saving measures on a critically injured child." *Complaint*, ¶¶ 28-29, 32-38, 47. "The attorney[, David Kessler,] instructed [plaintiff] to issue an oral reprimand to [the dispatcher]." *Id*. at ¶ 47. Attorney David Kessler thereafter "discussed this issue" with plaintiff's counsel in this case and "confirmed that he had, in fact, told Ms. Marshall to proceed with the verbal reprimand[.]" *See* Doc. No. 13-2, p. 2. *Defendants' Motion* asks this Court to confirm that plaintiff's disclosure of her November 19, 2012 communications with the Board's attorney and that attorney's subsequent disclosure of the same communications to plaintiff's attorney does not constitute a waiver of the attorney client privilege.

Plaintiff concedes that the relevant communications are protected by the attorney client privilege, that the privilege belongs to the county, and that plaintiff had no authority to waive the privilege. *See Plaintiff's Response*, pp. 1-2. Plaintiff argues, however, that it was defendants who have waived the attorney-client privilege by placing the communications at issue in this litigation and by "disputing Plaintiff's statements regarding the advice she received from the attorney and implying she did not receive the advice." *Id*.

5

at pp. 3-4. Plaintiff argues that, "[b]ecause Defendants have injected the substance of the attorney-client communications between Plaintiff and the County's attorney into this litigation and have implied the content of those communications, the Defendants cannot now seek to exclude the communications as attorney/client privileged." *Id*. at p. 10. Plaintiff's arguments are without merit.

Plaintiff argues that defendants waived the attorney-client privilege and "injected" privileged communications into this litigation by attaching evidentiary materials to *Defendants' Motion* that "imply the content of the attorney/client communications they now seek to have the Court exclude." *Plaintiff's Response*, p. 8. However, it was actually plaintiff who injected privileged communications into this litigation by expressly disclosing the communications in the *Complaint*, *see Complaint*, ¶¶ 47 ("The next day, November 19, 2012, Marshall called the attorney for the County seeking counsel on how to handle the incident with Bri Clark. The attorney instructed Marshall to issue an oral reprimand to Bri Clark."), 52 ("Marshall was acting at the direction of the attorney for Belmont County, who instructed her to issue the oral reprimand."), and by positing the content of the privileged communication as a factual basis for a claim, *compare id*. at ¶ 67 ("The alleged reasons for terminating the plaintiff's employment were mere pretext for the real reason . . . ."), with *Plaintiff's Response*, p. 8 ("Here Plaintiff, to demonstrate that the reasons provided by Defendants to justify her termination were a 'mere pretext' for discrimination, has plead that

she was acting upon the advice of the County's counsel."). *See Ross v. City of Memphis*, 423 F.3d 596, 603-05, 604 n.5 (6th Cir. 2005) ("[T]he contents of a privileged communication may be injected into litigation either by making the content of communications a factual basis of a claim or defense or by disclosing the communication itself."). Plaintiff's arguments to the contrary notwithstanding, the Court views *Defendants' Motion* as an attempt to limit the consequences of plaintiff's unilateral and unauthorized disclosure, and the documents attached to *Defendants' Motion* as evidence of defendants' steps to prevent the disclosure. *See Defendants' Motion*, Exhibit B (February 8, 2013 letter from defendants' attorney claiming that communications are protected by attorney-client privilege and arguing that plaintiff can't waive the privilege), Exhibit C (plaintiff's attorney's February 12, 2013 response, indicating that the privilege has been waived), Exhibit D (Defendants' February 18, 2013 letter to attorney David Kessler, indicating that plaintiff lacks authority to waive the privilege and requesting that he refrain from further disclosure). A client may waive the attorney-client privilege intentionally, *see e.g.*, Fed. R. Evid. 502(a), or "by conduct which implies a waiver of the privilege or a consent to disclosure." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) (citing *In re von Bulow*, 828 F.2d 94, 104 (2nd Cir. 1987)). There is no indication that the Board intentionally waived the attorney-client privilege; the Board expressly objected to plaintiff's disclosure and has taken affirmative steps to limit disclosure and to protect the privilege.

The Board's efforts to preserve its privilege in this action simply do not constitute a waiver.

As noted *supra*, defendants also seek an order "explicitly prohibit[ing] Ms. Marshall from testifying that she sought the advice of counsel and acted strictly in accordance therewith." *Defendants' Motion*, pp. 8-9. Defendants now concede that plaintiff "can testify to the fact that she had a conversation with Mr. Kessler on November 19, 2013." *Defendants' Response*, p. 10. Defendants also concede that plaintiff "can testify to the actions she took after she spoke with Mr. Kessler." *Id*. at p. 12. However, defendants argue that plaintiff "cannot testify that her actions were in accordance with the legal consultation" because doing so would "effectively disclos[e] the content of the communication between her and Mr. Kessler." *Id*. at p. 10. This Court agrees.

Plaintiff alleges that she consulted with the Board's attorney and that he instructed plaintiff to issue an oral reprimand to Bri Clark. *Complaint*, ¶¶ 47, 52. Testimony that plaintiff issued an oral reprimand in accordance with the directive of defendants' attorney would therefore effectively disclose the entire alleged communication, *i.e.*, that plaintiff was instructed to issue an oral reprimand. Plaintiff has not cited any authority that would suggest a contrary result. Plaintiff does argue that "[a]n issue similar to that presented here was decided" in *Ross v. City of Memphis*, 423 F.3d 596 (6th Cir. 2005). *Plaintiff's Response*, pp. 6-7. This case is, however, distinguishable from *Ross* because plaintiff does not argue

8

that she was seeking legal advice in her individual capacity and defendants have not asserted a claim or defense that would require examination of protected communications. *See Ross*, 423 F.3d at 604-06.[1]

Accordingly, it is **RECOMMENDED** that *Defendants' Motion*, Doc. No. 13, be **GRANTED in part** and **DENIED in part**. Specifically, it is recommended that the Court issue an order confirming that the Board has not waived the attorney-client privilege with respect to plaintiff's November 19, 2011 communications with attorney Kessler, and, absent evidence of waiver, prohibit plaintiff from testifying that she acted in accordance with attorney Kessler's directive.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.

---

[1] The Court is willing to revisit this issue should the Board affirmatively put plaintiff's authority to issue a verbal reprimand to Bri Clark at issue in this litigation.

9

*See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

January 17, 2014                              *s/Norah McCann King*
                                              Norah M<sup>c</sup>Cann King
                                              United States Magistrate Judge